IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY SCOTT KRAL,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No.: 1:10-cv-01483 JLT<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT IN FAVOR OF DEFENDANT<br>MICHAEL J. ASTRUE, COMMISSIONER OF<br>SOCIAL SECURITY, AND AGAINST<br>PLAINTIFF RANDY SCOTT KRAL |

    Randy Scott Kral ("Plaintiff") asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in evaluating the credibility of his subjective complaints. Therefore, Plaintiff seeks judicial review of the administrative decision denying his claim for benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

## **PROCEDURAL HISTORY**[1]

    Plaintiff filed an application for supplemental security income on February 28, 2007, and an application for disability insurance benefits on March 29, 2007, alleging disability beginning December 1, 2006. AR at 12. The Social Security Administration denied these claims initially and

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

upon reconsideration. *Id.* at 54-68. Plaintiff requested a hearing, which was held before an ALJ on May 19, 2009. *Id.* at 19.

The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on March 12, 2010. AR at 12-18. Plaintiff requested review of the decision by the Appeals Council of Social Security on the ALJ's decision, which was denied on June 21, 2010. *Id.* at 3-6. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, as "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under Titles II and XVI of the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (2010). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 404.1527, 416.927, 416.929.

A.   Relevant Medical Evidence[2]

*Treatment Notes*

Plaintiff reported to Kern Medical Center ("KMC") on November 29, 2006, and complained of dizziness, weakness, and a headache. AR at 280. In addition, Plaintiff had "mild chest pain" and a cough. *Id.* at 429.

In December 2007, Plaintiff was treated at KMC for rectal bleeding, headaches that lasted all day and caused "occasional" blurred vision, a lump in his left shoulder, and vomiting before and after meals. AR at 412-414. Plaintiff reported he smoked five packs of cigarettes a day. *Id.* at 412. According to Plaintiff, he was not on any medication, and "last took meds 2 years ago." *Id.* at 399, 413. Plaintiff was diagnosed with chronic obstructive pulmonary disease, and given a nebulizer

---

[2] Notably, Plaintiff did not have a treating physician, and the Social Security Administration did not order a consultative examination.

3

treatment. *Id.* at 413. After the treatment, "examination revealed good breath sounds in all lung fields without rales, wheezes, or rhonchi." *Id.* Plaintiff was given an oral inhaler, and told to use it three times a day. *Id.* at 410.

Plaintiff continued to complain that he had a persistent cough and headaches in January and March of 2008. AR at 374, 378-79. Plaintiff reported he had decreased his smoking, and was "down . . . to two cigarettes per day" in March. *Id.* at 370. Dr. Huerta noted Plaintiff's chronic obstructive pulmonary disease "appear[ed] to have improved." *Id.* at 371.

In May 2008, Plaintiff reported he started smoking again, and in June 2008 smoked four to five packs of cigarettes per day. AR at 335, 344. Following a pulmonary function spirometry test in July 2008, Dr. Munoz determined the test showed normal results, and Plaintiff had normal lung volume measurements. *Id.* at 331. However, Dr. Munoz observed Plaintiff had "[m]oderately severe diffusion abnormality which is of a type seen with emphysema, anemia, thromboenbolism, vasculitis, and membrane diffusion." *Id.* She recommended that Plaintiff stop smoking and continue using an inhaler. *Id.* Plaintiff was informed that his headaches were due to his chronic cough. *Id.* at 326.

Plaintiff reported to KMC for a follow up on August 28, 2008, and complained he continued to have headaches. AR at 312-14. His pulmonary exam was "unremarkable," and the physician noted Plaintiff "continues to smoke." *Id.* at 314.

On October 2, 2008, Plaintiff reported to KMC complaining of dizziness and severe headaches. AR at 306. In addition, Plaintiff reported he had a sharp pain in his chest that arose suddenly once a day. *Id.* He reported that he use marijuana for the pain. *Id.* Dr. Munoz recommended an echocardiograph, which was performed at the Cardic Diagnostic Laboratory On October 14, 2008. *Id.* at 304-06. Plaintiff's left ventricle was "moderately dilated" and his right ventricle was normal in size. *Id.* at 304. His atria and mitral, tricuspid, and aortic valves were normal, though there was "mild regurgitation" in the tricuspid and mitral valves. *Id.*

Plaintiff continued to smoke about five packs per day and was diagnosed with emphysema and asthma at KMC on January 6, 2009. AR at 286, 290, 206. Again, Plaintiff was "counseled . . . regarding smoking cessation." *Id.* at 288.

///

*Physician Opinions*

On April 11, 2007, Dr. G.W. Bugg reviewed Plaintiff's medical records and opined Plaintiff's impairment was "no more than slight, non severe." AR at 236-237. Following the addition of medical records, Dr. Bugg reviewed the record on May 24, 2007. *Id.* at 237. Again, Dr. Bugg opined Plaintiff had "[n] more than slight limitation." *Id.* This assessment was affirmed by Dr. Fonte on July 3, 2007. *Id.* at 238-39.

B.  Hearing Testimony

Plaintiff testified before the ALJ at a hearing on May 19, 2009. AR at 21. Plaintiff confirmed that he completed the eleventh grade, and neither earned a GED nor completed an equivalent of high school. *Id.* at 27. Also, Plaintiff reported he did not have any vocational training or college. *Id.* According to Plaintiff, he had criminal convictions for arson and robbery. *Id.* at 27-28. Plaintiff reported he worked previously as a roofer and fry cook, but stopped working on December 1, 2006, because he "got sick." *Id.* at 27-28.

Plaintiff confirmed he had a history of mild cardial infarction, coronary artery disease with skin placement, stomach ulcers, tension headaches from a cough, and chronic obstructive pulmonary disease. *Id.* at 36. Plaintiff said he saw spots and flashes when he had a headache, which lasted "all day long," and his vision was "blurry" in his right eye. *Id.* at 47. Further, Plaintiff reported he had several other physical problems, including "hole in [his] back," which drained spinal fluids, "a big knot" in his left shoulder, and "clicking" in his left. AR at 46-47. Plaintiff said he saw spots and flashes when he had a headache, and his vision was "blurry" in his right eye. *Id.* at 47. According to Plaintiff, his problem breathing kept him from working, and he had to use a nebulizer machine six times a day. *Id.* at 45, 50.

He reported that he had constant pain in his lower back, that was an "eight" on a scale of one to twenty, with "one being kind of mild" and ten "being so bad you felt you had to go to the emergency room." AR at 37-38. In addition, Plaintiff stated he had constant chest pain, which was a "seven" on the same scale. *Id.* at 38. To relieve his chest pain, Plaintiff said he took aspirin and would lie down, and to relieve his back pain he took ibuprofen. *Id.* With the medication, Plaintiff said his pain decreased to "[a]bout a four" on the scale of one to ten. *Id.*

Plaintiff said he had a driver's license and estimated he drove "two or three times a day, 10 times a week" to go to appointments. AR at 30. Plaintiff reported he never cooked or prepared meals, but he took care of his personal grooming such as combing his hair, dressing, and showering. *Id.* at 30-31. Plaintiff reported he did not do laundry, yard work, vacuum, or dust because he "can't get up and do it all." *Id.* at 32-33. Plaintiff stated that his twenty-year-old daughter, who lived with him, took care of all the house chores. *Id.* at 33.

Plaintiff estimated that each day he watched television "[a]bout 10 hours" and talked on the phone "about half an hour." AR at 33-34. Plaintiff stated he visited with friends and neighbors for about an hour each day. *Id.* at 34. In addition, Plaintiff stated he would lie down "about six hours" during the day. *Id.* at 44.

According to Plaintiff, he could lift and carry ten pounds, stand for fifteen minutes, walk "[a]bout half a block, and sit "[a]bout an hour and a half." AR at 36-37. Also, Plaintiff reported he had difficulty concentrating and paying attention, and state he could concentrate for twenty minutes at the longest. *Id.* at 37. Plaintiff believed that after concentrating for twenty minutes, he required a thirty-minute rest before he could pay attention for another twenty minutes. *Id.*

Plaintiff admitted that he still smoked cigarettes though his doctors told him to quit. AR at 35. Plaintiff estimated he had smoked "seven packs a day" for "[a]bout ten years." *Id.* Plaintiff said his daughter bought the cigarettes, which she could afford because she had financial assistance and welfare. *Id.* Plaintiff denied use of alcohol and street drugs. *Id.* at 36. Plaintiff reported he had a prescription for medical marijuana, which he smoked "[e]very day." *Id.* at 51-52. He believed the marijuana helped him sleep. *Id.* at 52.

Vocational expert ("VE") Jose Chaparro testified after Plaintiff. The VE characterized Plaintiff's past relevant work, based upon a work history report, as "construction worker II," roofer, deep fat fry cook, and security guard. AR at 40. According to the VE, "construction worker II" was a very heavy, unskilled position. *Id.* The VE observed the DOT[3] described the positions of roofer

---

[3] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

and deep fat fry cook as medium work, but both positions appeared heavy work as performed by Plaintiff. *Id.* Plaintiff's work as a security guard was "light and semi-skilled." *Id.* at 40-41. With this past relevant work, the VE opined Plaintiff learned a number of skills, including "the use of a wide variety of hand and power tools related to carpentry following plans such as blue prints," oral and written communication skills, the ability to diffuse uncooperative people, to think clearly and unemotionally, and write reports. *Id.* at 41.

The ALJ asked the VE to consider the limitations of several hypothetical individuals, based upon the assumption that the persons "are the same age, education, . . . language, and experienced background" as Plaintiff. AR at 42. First, the VE considered a person who "should avoid concentrated exposure to dusts, fumes, odors, gases, . . . and to extreme heat and to extreme cold." *Id.* The VE opined this person would be able to perform Plaintiff's past relevant work as a deep fat fry cook. *Id.* at 43. Also, the person could perform work such as housecleaner, bellhop, or commercial/institutional cleaner. *Id.* at 43-44.

Next, the VE considered an individual based upon Plaintiff's testimony of his limitations. AR at 44. The person was needed to lie down for approximately six of eight hours, could lift and carry ten pounds, stand fifteen minutes, walk half a block, and sit one and a half hours at a time. *Id.* In addition, the person could concentrate for 20 minutes at a time. *Id.* The VE opined the person could not perform Plaintiff's past relevant work, or any other work in the national economy. *Id.* at 44-45.

C. The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2006. AR at 14. Second, the ALJ found Plaintiff has the following severe impairments: "status post myocardial infarction, coronary artery disease with stent placement in 200, chronic obstructive pulmonary disease, [and] tobacco abuse." *Id.* (internal citations omitted). These impairments did not meet or medically equal a listed impairment. *Id.* at 15.

At the fourth step, to determine Plaintiff's residual functional capacity ("RFC"), the ALJ considered "the entire record." AR at 15; *see also* AR at 15-17. The ALJ determined Plaintiff had

the RFC "to perform a full range of work at all exertional levels but with the nonexertional limitations to avoid concentrated dusts, fumes, gases, and poor ventilation, as well as concentrated exposure to extreme heat and cold." *Id.* at 15. With this RFC, the ALJ determined Plaintiff was capable of performing past relevant work. *Id.* at 17. Further, the ALJ concluded Plaintiff was able to performing jobs existing in significant numbers in the national economy. *Id.* at 18. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.*

## DISCUSSION AND ANALYSIS

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991). An adverse finding of credibility must be based on clear and convincing reasons where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause very few of the alleged symptoms." AR at 16. Also, the ALJ determined Plaintiff's "statements concerning the intensity, duration and limiting effects of [his] symptoms are not credible. . ." Plaintiff argues "the ALJ improperly assessed his subjective symptom testimony in assessing the residual functional capacity" and failed to set forth clear and convincing reasons to reject the testimony. (Doc. 13 at 5-6).

Factors that an ALJ may consider in a credibility determination include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony of physicians concerning the nature, severity, and effect of the symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v Barnhart*, 287 F.3d 947, 958-59 (9th Cir. 2002). Credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v.*

*Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Here, the ALJ considered the objective medical evidence, Plaintiff's poor work history, noncompliance with medical recommendations, inconsistent statements, and his convictions of crimes of moral turpitude. AR at 17.

*Objective medical evidence*

The ALJ considered the objective medical evidence as part of his credibility determination. *See* AR at 15-16. Though Plaintiff asserts this factor was legally insufficient (Doc. 13 at 7-8), "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96-7p, 1996 SSR LEXIS 4, at *2-3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Here, the ALJ did not base his decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

*Noncompliance with medical recommendations*

"[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony. *Fair*, 885 F.2d at 603. Therefore, noncompliance with treatment may be a clear and convincing reason for an adverse credibility determination. *Id.*; *Bunnell*, 947 F.2d at 346. However, a credibility determination based upon a failure to quit smoking is disfavored, as explained by the Seventh Circuit:

> One does not need to look far to see persons with emphysema or lung cancer—directly caused by smoking—who continue to smoke, not because they do not suffer gravely from the disease, but because other factors such as the addictive nature of the product impacts

their ability to stop. This is an unreliable basis on which to rest a credibility determination.

*Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). This Court has concluded that a plaintiff's failure to quit smoking was not a valid reason to find a plaintiff to be incredible when she complained of issues unrelated to her tobacco use. *Walters v. Astrue*, 2010 U.S. Dist. LEXIS 55698 at *40 (E.D. Cal. May 10, 2010). Similarly, here, though some of Plaintiff's complaints may be related to smoking, other impairments are not. Therefore, the fact that Plaintiff failed to stop smoking despite several recommendations to do so is not a clear and convincing reason for rejecting his credibility.

*Work history*

The ALJ noted Plaintiff had "a poor work history with only 7 full substantial gainful activity years in the past 15, or in his entire life." AR at 17. A poor work history is a relevant factor in a credibility determination. *See Thomas*, 278 F.3d at 959 (holding that the claimants "extremely poor work history" shows "little propensity to work" and negatively affects a credibility determination); *see also Schaal v. Apfel*, 134 F.3d 496, 502 (2nd Cir. 1998) (explaining that a poor work history may be considered in a credibility evaluation). Therefore, this was a valid consideration by the ALJ in determining Plaintiff's credibility.

*Convictions for crimes of moral turpitude*

An ALJ may rely on a claimant's felony convictions for crimes of moral turpitude as part of a credibility determination. *See Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal 2007) ("felony convictions involving moral turpitude . . . are a proper basis for an adverse credibility determination"). Here, the ALJ noted Plaintiff had been convicted of arson and robbery. AR at 17. The Ninth Circuit observed, "Arson, which is *not* a minor offense, necessarily involves an act of baseness or depravity contrary to accepted moral standards and is thus a crime involving moral turpitude." *Rodriguez-Herrera v. INS*, 52 F.3d 238, 239 (9th Cir. 1995) (internal quotations and citation omitted) (emphasis in original). Likewise this Court concluded that "robbery and attempted robbery are crimes of moral turpitude." *Camacho v. McDonald*, 2011 U.S. Dist. LEXIS 56583 at

*34 (E.D. Cal. April 27, 2011).  Therefore, it was appropriate for the ALJ to consider Plaintiff's convictions as part of the adverse credibility determination.

*Inconsistent Statements*

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ noted Plaintiff failed "to be truthful with his treating physicians" and gave inconsistent statements regarding his smoking history.  AR at 17.  Plaintiff's lack of candor was a valid consideration by the ALJ.  *Smolen*, 80 F.3d at 1284; *Fair*, 885 at 604 n.5.

## CONCLUSION

When a reason for an adverse credibility determination is not supported by the record or is legally insufficient, the Court must consider whether the reliance on an invalid reason was a harmless error. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2003) (applying a harmless error standard where part of the credibility finding was invalid).  The Ninth Circuit stated, "So long as there remains 'substantial evidence supporting the ALJ's conclusion's on credibility' and the error 'does not negate the validity of the ALJ's ultimate credibility conclusion,' such [error] is deemed harmless." *Carmickle*, 533 F.3d at 1162, quoting *Batson*, 359 F.3d at 1197. Here, one of the reasons stated by the ALJ for finding Plaintiff's complaints to be incredible, was legally insufficient.  However, still there remains substantial evidence, supported by clear and convincing reasons for the adverse credibility determination.

Moreover, the ALJ's findings were "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Therefore, the ALJ's partial reliance an invalid reason for rejecting Plaintiff's subjective complaints, was harmless.  For all these reasons, the Court concludes the ALJ's credibility determination must be upheld.  *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and

2. The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Randy Scott Kral.

IT IS SO ORDERED.

Dated:   **September 20, 2011**                                              **/s/ Jennifer L. Thurston**
                                                                                            UNITED STATES MAGISTRATE JUDGE